# UNITED STATES DISTRICT COURT
# DISTRICT FOR CONNECTICUT

| | | |
|---|---|---|
| EDUARDO CASIANO, | : | |
| | : | |
| Petitioner, | : | |
| v. | : | 3:11-cv-73 (MRK) |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent. | : | |

## RULING AND ORDER

Pending before the Court are five motions by Petitioner Eduardo Casiano: a Petition Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [doc. # 1]; a Motion to Strike as Non-Responsive the Government's Memorandum in Opposition to Mr. Casiano's Petition [doc. # 9]; a Motion from Mr. Casiano requesting, first, that transcripts from five previous proceedings before this Court be provided to him at the Government's expense, and, second, that he be given thirty days after receipt of those transcripts to prepare a supplemental § 2255 petition [doc. # 11]; a Supplemental Motion [doc. # 12] seeking five additional documents and transcripts; and a Motion to Join [doc. # 14] the § 2255 proceeding brought by Mr. Casiano's co-defendant, Jose Santiago Vera. *See Vera v. United States*, No. 3:11-cv-864 (MRK) (D. Conn.).

I.

On October 27, 2006, a jury found Mr. Casiano guilty of conspiracy to possess with the intent to distribute and to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; conspiracy to possess with the intent to distribute and to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B),

1

and 846; possession with the intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); and possession with the intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). In addition, Mr. Casiano pled guilty to a fifth count: possession with the intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D).

At Mr. Casiano's trial, the Government had presented approximately 125 calls that were intercepted on Mr. Casiano's cellular phones between May and July of 2005. The Government also offered seized narcotics and the testimony of eight law enforcement witnesses and three cooperating witnesses: Carlos Roman, who testified about buying marijuana, heroin, and cocaine from Mr. Casiano, *see, e.g.*, Tr. at 297, 299, 313, 328; Raul Montalban, who testified about his repeated heroin and cocaine purchases from Mr. Casiano, *see, e.g.*, Tr. at 911; and Nazariel Gonzalez, who testified about a large heroin transaction between himself and Mr. Casiano, *see, e.g.*, Tr. at 1207-09. Mr. Roman and Mr. Montalban both also testified in detail about the meaning of code words used in recorded phone conversations with Mr. Casiano in which drug deals were frequently made and discussed.

Since his trial, Mr. Casiano has been no stranger to this Court. After receiving the verdict, Mr. Casiano and his fellow defendant, Mr. Vera, filed a joint motion requesting an *in camera* inquiry of a juror who had written to express an opinion about their case. That motion was denied. *See United States v. Casiano*, No. 3:05CR195(MRK), 2007 WL 1692125 (D. Conn. June 7, 2007). On March 3, 2008, Mr. Casiano moved for a new trial, claiming that his trial counsel had provided ineffective assistance. That motion too was denied, though for untimeliness; the Court did not express an opinion on the motion's merits. *See United States v. Casiano*, No. 3:05CR195(MRK), 2008 WL 1766576 (D. Conn. April 11, 2008). On April 11, 2008, the Court

sentenced Mr. Casiano to concurrent terms of incarceration of twenty years and ten years, and concurrent terms of supervised release of ten years, six years, and four years. Mr. Casiano timely appealed.

During the course of his appeal, Mr. Casiano returned to this Court three times with *pro se* motions seeking the production of trial transcripts and other documents. The Court denied these motions, as the documents were already in the possession of Mr. Casiano's retained counsel. Mr. Casiano also filed with this Court a Motion for Sanctions against his attorney. On June 15, 2009, the Court denied the Motion and sent Mr. Casiano an attorney grievance form with which to pursue his complaints about counsel. On January 27, 2010, the Second Circuit affirmed Mr. Casiano's conviction by summary order. *See United States v. Vera*, 362 Fed. App'x 199 (2d Cir. 2010).

II.

Before turning to the merits of Mr. Casiano's Petition, the Court can dispatch quickly with Mr. Casiano's Motion to Strike, his two Motions Requesting Transcripts, and his Motion to Join Mr. Vera's Proceeding. Far from being non-responsive, the Government's forty-page Memorandum in Opposition [doc. # 5] carefully responds to, and indeed clarifies, Mr. Casiano's many allegations. Mr. Casiano's Motion to Strike as Non-Responsive [doc. # 9] is therefore DENIED. The Court has instead followed Mr. Casiano's alternative suggestion, *see id.* at 1, and treated his Motion as a Reply to the Government's Response. Because the Court does not believe that any additional transcripts are "needed to decide the issue presented by the suit," *see* 28 U.S.C. § 753(f), Mr. Casiano's motions [docs. # 11, 12] requesting transcripts at the Government's expense are also DENIED. Finally, Mr. Casiano's Motion to Join [doc. # 14] is DENIED, since 28 U.S.C. § 2255 only provides a means to challenge one's own sentence, not

3

that of someone else. *See* 28 U.S.C. § 2255(a) ("A prisoner in custody under sentence of a court . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.").

III.

In his current § 2255 Petition [doc. # 1], filed on January 13, 2011, Mr. Casiano raises claims of ineffective assistance of counsel and prosecutorial misconduct. He adduces sixteen instances in which his pre-trial, trial, and appellate counsel were ineffective; he also alleges misconduct by Assistant United States Attorney Robert Spector.

To obtain collateral relief under 28 U.S.C. § 2255, Mr. Casiano must show that his "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. "As a general rule, relief is available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Napoli*, 32 F.3d 31, 35 (2d Cir. 1994) (quotation marks omitted). Constitutional errors will not be corrected through a writ of habeas corpus unless they have had a "substantial and injurious effect," that is, unless they have resulted in "actual prejudice." *Brecht v. Abrahamson*, 507 U.S. 619, 623, 637-38 (1993); *see also Underwood v. United States*, 166 F.3d 84, 87 (2d Cir. 1999) (applying *Brecht* to a § 2255 petition).

To establish ineffective assistance of counsel in violation of the Sixth Amendment, Mr. Casiano must show that his attorney's performance fell "outside the wide range of professionally competent assistance" and that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 690, 694 (1983). The *Strickland* standard is a rigorous one. *See Lindstadt v. Keane*, 239 F.3d 191, 199 (2d

4

Cir. 2001). "The court's central concern is not with 'grad[ing] counsel's performance,' but with discerning 'whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.'" *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (quoting *Strickland*, 466 U.S. at 696-97).

In Mr. Casiano's ineffective assistance of counsel claim, "counsel" has to be read in the plural. Mr. Casiano was represented by four CJA-appointed attorneys and two retained attorneys at and before trial. *See United States v. Casiano*, No. 3:05CR195 (MRK), 2008 WL 1766576, at *1 (D. Conn. April 11, 2008). An additional attorney represented Mr. Casiano during his Second Circuit appeal. While a claim that seven successive attorneys offered ineffective assistance may raise suspicions of unreasonable expectations on the client's part, *see* Gov. Resp. [doc. # 5] at 25, the Court has carefully considered each of Mr. Casiano's allegations in light of the record in this case and the Court's own long engagement with it.

Mr. Casiano provides factual details and legal support for only three of the sixteen instances of ineffective assistance he offers. In the first of these, Mr. Casiano alleges that his attorney was ineffective because he failed to request a dismissal of Mr. Casiano's indictment based on what Mr. Casiano describes as inaccurate hearsay that was presented to the grand jury. *See* Mem. in Supp. [doc. # 1-1] at 1-12. The Supreme Court, however, has "declined to enforce the hearsay rule in grand jury proceedings." *United States v. Williams*, 504 U.S. 36, 50 (1992). Thus, any request for dismissal on that basis would have been denied. Mr. Casiano's claim that testimony presented to the grand jury was inaccurate is similarly unavailing, especially since Mr. Casiano never makes clear what was inaccurate about the testimony. Mr. Casiano's claim amounts to a complaint that the grand jury never heard his side of the story. But as the Supreme

Court held in *United States v. Williams*, the Government need not disclose even "substantial exculpatory evidence" to the grand jury. 504 U.S. at 53. Since Mr. Casiano's counsel had no reason to move to dismiss the indictment, his failure to do so cannot constitute ineffective assistance. *See Strickland*, 466 U.S. at 690.

Mr. Casiano's second claim is that his trial counsel failed to file a motion to suppress evidence obtained during a search of Mr. Casiano's vehicle on July 6, 2005. *See* Pet. [doc. # 1] at CM/ECF 12;[1] Mem. in Supp. [doc. # 11-1] at 13-25. According to Mr. Casiano, this search was conducted without probable cause. *See* Mem. in Supp. [doc. # 11-1] at 15. However, Mr. Casiano told his trial attorney that he had consented to the search in question. *See* Bansley Aff. [doc. #8-1] ¶ 22. Moreover, evidence presented at trial made clear that the FBI had probable cause—based on physical surveillance and two months of intercepted phone calls—to stop the car, or to direct other police officers to do so. *See* Government's Resp. [doc. # 5] at 33.H ere again, there is no basis for Mr. Casiano's claim, and there would have been no basis for his attorney to file a motion to suppress. Accordingly, the attorney's failure to do so cannot constitute ineffective assistance. *See Strickland*, 466 U.S. at 690.

The third claim for which Mr. Casiano provides an argument is listed as the fifth claim in his Petition. *See* Pet. [doc. # 1] at CM/ECF 12, 15-16. Here, Mr. Casiano argues that his attorney should have recalled a government witness for further testimony after the Court replaced a Spanish interpreter during trial. However, Mr. Casiano's attorney has sworn, in an affidavit submitted by the Government, that Mr. Casiano agreed with this decision at the time, and further, that Mr. Casiano thought that any inaccuracies in the translation at trial had been insubstantial. *See* Bansley Aff. [doc. # 8-1] ¶ 25. Mr. Casiano has not raised a factual dispute about this; he

---

[1] Since the pages of Mr. Casiano's Petition [doc. # 1] are not numbered sequentially, the Court uses the CM/ECF pagination when referring to it.

merely claims in retrospect that a different choice should have been made. Given how damaging the testimony in question was to Mr. Casiano's case, the Court cannot fault the decision not to prolong it. Counsel's strategic choice was certainly well within the range of professionally competent choices that trial attorneys must be allowed to make. *See Strickland*, 466 U.S. at 689.

Mr. Casiano's remaining thirteen allegations of ineffective assistance are similar, in that they amount to what the Second Circuit has called "the law's equivalent of 'buyer's remorse' or 'Monday morning quarterbacking' and can be quickly resolved." *Yick Man Mui v. United States*, 614 F.3d 50, 57 (2d Cir. 2010). In one (# 3), *see* Pet. [doc. # 1] at CM/ECF 12, Mr. Casiano complains of counsel's failure to object to testimony from the Government's investigator—testimony which the Second Circuit has already upheld on appeal. *See Vera*, 362 Fed. App'x at 200. Other claims (## 4, 6, 7, 9, 10, 11, 12, 14, and 15) express Mr. Casiano's wish that counsel had objected to or appealed various matters before, during, and after his trial. None of these claims, however, provide legitimate reasons why counsel should have objected or appealed. *See, e.g.*, Pet. [doc. # 1] at CM/ECF p. 14 ("Defendant was denied the constitutional rights to effective assistance of counsel when, counsel failed to challenge the admission of evidence pre-trial."); *see also* Bansley Aff. [doc. # 8-1]. Thus, Mr. Casiano has failed to "overcome the presumption" that his counsel's strategy at the time was sound. *See Strickland*, 466 U.S. at 689.

Mr. Casiano's final allegations are that counsel did not provide him separate copies of Jencks material (No. 8), that counsel did not properly investigate the case and prepare for trial (No. 13), and that appellate counsel did not sufficiently search the trial record (No. 16). These claims are sharply contested by the Government, *see* Bansley Aff. [doc. # 8-1] ¶¶ 28, 31; Opp. to Pet.'s Mot. for Production [doc. # 15] at 5, and Mr. Casiano does not rebut the Government's claims in his reply [doc. # 10]. Like Mr. Casiano's other arguments, these run afoul of the

Supreme Court's warning that "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. In fact, during trial, the Court did not find that the choices made by Mr. Casiano's counsel were in any way unreasonable or unprofessional, and none of Mr. Casiano's subsequent allegations have caused the Court to believe otherwise.

Further, given the crushing weight of the evidence presented against Mr. Casiano at trial, *see* Gov. Resp. [doc. # 5] at 7-15, it is inconceivable that a different result would have obtained had counsel followed any the strategies that Mr. Casiano now, retrospectively, endorses. The scores of recorded calls to and from Mr. Casiano's phone and the days of testimony by his former colleagues in the drug trade were what led to Mr. Casiano's conviction—not any of the errors alleged to have been made by counsel. Thus, even if the Court assumes for the sake of argument that any of these factually unsupported allegations were true—that is, even assuming that Mr. Casiano's counsel were deficient in any of the ways Mr. Casiano claims—the Court does not believe that curing these deficiencies would have led to a different outcome or that Mr. Casiano was in any way prejudiced. *See Strickland*, 466 U.S. at 691-92. The Court thus rejects Mr. Casiano's ineffective assistance of counsel claim.

### IV.

The Government argues that Mr. Casiano's claims of prosecutorial misconduct are procedurally barred since he did not raise them during his appeal to the Second Circuit. *See* Gov. Resp. [doc. # 5] at 39-40. The Government is certainly correct that "[a] motion under § 2255 is not a substitute for an appeal." *Zhang v. United States*, 506 F.3d 162, 166 (2d Cir. 2007)

(quotation marks and citation omitted). Where a § 2255 petitioner "failed properly to raise his claim on direct review, the writ [of habeas corpus] is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged . . . violation.'" *Reed v. Farley*, 512 U.S. 339, 354 (1994) (second alteration in original) (citations omitted).

The Court hesitates, however, to make such short work of Mr. Casiano's second claim. After all, the ineffective assistance of appellate counsel which Mr. Casiano has alleged *could*—were his allegation convincing—excuse Mr. Casiano's failure to raise his misconduct claim on appeal. Though Mr. Casiano does not make this argument himself, the Court notes a logical circle: since Mr. Casiano did not raise his prosecutorial misconduct claim on appeal, that claim can proceed now only if Mr. Casiano's appellate counsel was ineffective; at the same time, if the prosecutorial misconduct claim were to proceed and be found valid, appellate counsel's failure to raise the issue earlier might itself provide evidence of ineffective assistance. To avoid this trap, the Court has considered Mr. Casiano's second claim on its merits.

Mr. Casiano alleges that Assistant United States Attorney Robert Spector committed misconduct by knowingly bringing perjured testimony before the grand jury, the court that issued search and arrest warrants against Mr. Casiano, and the jury at trial. Even viewing these allegations in the light most favorable to Mr. Casiano, the Court concludes that they are nothing but an attempt to retry the facts of his case. As his Petition makes clear, *see* Pet. [doc. # 1] at CM/ECF 19, Mr. Casiano's claim is ultimately that that there was contradictory testimony at trial, thus there must have been perjury, and the prosecutor must have known about it. Far from the "complete miscarriage of justice" that § 2255 relief requires, *Hill v. United States*, 368 U.S. 424, 471 (1962), Mr. Casiano's description of conflicting testimony illustrates the very purpose

of adversarial trials, in which various witnesses relate their often conflicting versions of events and the jury decides who to believe.

Mr. Casiano has offered no evidence to support his assertion that any of the testimony at trial was perjured. He has presented no reason to believe that the prosecutor knowingly presented perjured testimony. Finally, he has not offered any arguments which could not have been raised *pro se*—as Mr. Casiano has not previously hesitated to do—at earlier points during the trial or on direct appeal. Both on the merits and for procedural reasons, therefore, his claim of prosecutorial misconduct must fail.

V.

Having rejected both of Mr. Casiano's grounds for relief, the Court DENIES Mr. Casiano's § 2255 Petition. Because none of Mr. Casiano's allegations raise genuine factual disputes that reach beyond the record, *see Raysor v. United States*, 647 F.3d 491, 494-95 (2d Cir. 2011), and Mr. Casiano has not "identif[ied] available sources of relevant evidence" in support of his "bald allegations," *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009); *Newfield v. United States*, 565 F.2d 203, 207 (2d Cir. 1977), the Court sees no need to grant a hearing in this matter. "[T]he files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

The only remaining issue is whether to issue a Certificate of Appealability ("COA"). For a COA to issue, Mr. Casiano must have "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists

would find the district court's assessment of the constitutional claims debatable or wrong."). Mr. Casiano has not done this. The Court therefore declines to issue a COA.

If Mr. Casiano wishes to appeal this Court's order, he must file his Notice of Appeal no later than 30 days from the date on which judgment is entered. *See* Fed. R. App. P. 4(a). "[E]ven where the District Court has declined to issue a COA, [the Second Circuit] may nonetheless issue a COA if petitioner can make the necessary showing that jurists of reason would find it debatable whether the district court was correct in its . . . ruling." *Rhagi v. Artuz*, 309 F.3d 103, 106 (2d Cir. 2006) (quotation marks omitted).

**The clerk is directed to enter judgment for Respondent and to close this case.**

IT IS SO ORDERED.

 /s/  Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: November 16, 2011.**